Our next case and our final one for the morning session is People v. Underwood, 524-1009. I've got Ms. Kurth, is that correct? Yes, sir. And Ms. Kane, on behalf of the state. Are you new to local OSAD, Ms. Kurth? Yes, sir. I've been to OSAD, and I don't particularly go back as a child. Okay, well I just asked because I haven't had the pleasure of having you appear in front of me yet, so I'll just try and get a little background. Are you ready to proceed? Yes, sir. Go right ahead. May it please the court and counsel, I am Samantha Kurth, and I represent the appellant Edward Underwood. The question for the jury in this case was very straightforward. Was Mr. Underwood the individual depicted in the surveillance footage? Rather than allowing the jury to answer that question independently and based solely on admissible evidence, the state repeatedly reinforced its identification theory through improper evidence. Because identity was the central issue in this case, I will begin with Officer Chrisman's identification testimony. Because the burglar's face was concealed in the surveillance footage, the state relied heavily on clothing comparisons. The prosecutor asked Mr. Chrisman whether the reason he sees Mr. Underwood's pants was because, quote, they matched the pants that were shown on the video, end quote. Officer Chrisman answered, that's correct. The same occurred regarding the shoes. That testimony was not merely descriptive. It was the evaluative identification conclusion on the central issue. Under the binding precedent of Thompson, lay identification testimony is only admissible when, first, the witness is in a better position than the jury for identification, and second, the safeguards are employed to minimize the risk that jurors will give undue weight to a law enforcement opinion. Neither requirement was satisfied here. First, Officer Chrisman had no prior familiarity with Mr. Underwood. He did not witness the burglary and viewed the same surveillance footage and clothing. There was nothing placing Chrisman in a better position than the jury here. Why weren't the officer just explaining the course of his investigation as to why he took these items in custody and possession? The state kind of shanghaied the system here, Your Honor, because he did not lay any foundation. He asked a leading question with no prior notice to the court or apparently defense counsel that he was taking this avenue. There is no issue in the pretrial matters in this case that this issue was ever raised. There were no motions eliminated, no discussion on the record that he was going to ask something that would violate Thompson. The jury viewed Mr. Underwood wearing the clothing in the interrogation and the arrest footage, and the ripped-style jeans were actually in evidence. Second, none of the Thompson safeguards were employed here. There was no inquiry outside the presence of the jury, no determination that Chrisman was actually in a better position than the jury, no determination that the testimony would assist the jury, and no cautionary instruction was given at all, much less the two times that it's required by Thompson. Instead, the jury simply heard the police officer confirm the clothing matched. That mattered because this was not a strong identification case. There was no eyewitness identification, no fingerprints, no DNA. We had no stolen property recovered from Mr. Underwood, and the perpetrator's face was concealed. Also, several clothing items worn by the perpetrator were not located. There was a sweatshirt, a ball cap, a mask, and under the sweatshirt, there was a white shirt being worn by the perpetrator. When Mr. Underwood was arrested 42 minutes later, he was wearing a dark shirt, and none of the other clothing items were recovered, even though the canine officer did an extensive search looking for the articles. The jury was left to answer one critical question. Were the similarities enough to identify Mr. Underwood as the murderer? Officer Chrisman supplied the critical inference the jury was being asked to draw. Under study, the question is whether the error threatened to tip the scales in a closely balanced case. Here it did, and the jury did not only hear Officer Chrisman's identification opinion, the jury repeatedly heard from an unidentified caller who reported a suspect matching Mr. Underwood's description, according to the interrogation, carrying or dragging a large object near the bar shortly after the burglary. That information came before the jury during opening statement, during Officer Wick's testimony, and through the interrogation video. Illinois law permits officers to explain that they acted upon information received, but it does not permit the state to place before the jury the substance of that out-of-court accusation under the guise of explaining investigative steps. That is precisely what Ochoa and Jura prohibited. Police conduct was not disputed, so the state did not need the accusation to explain why officers responded. The accusation mattered because it supported the state's identification theory. It suggested through hearsay that an outside witness observed conduct consistent with the burglary. That transformed the evidence from investigative background into substantive evidence of guilt. That evidentiary issue is significant by itself, but this issue is also a constitutional issue. Under Crawford, testimonial statements may not be admitted unless the declarant is unavailable and the defense has had a prior opportunity to cross-examine that witness. Neither occurred here. The caller never testified, and Mr. Underwood never had the opportunity to cross-examine that witness. Yet the jury was permitted to rely on the accusation when deciding identity. The strongest evidence that this mattered came from the jury itself. During deliberations, the jury asked specifically, what did the caller say the description of the individual was when they called 911? The question demonstrates the jury was actively considering the caller's accusation while deciding identity. The jury note demonstrates that the caller's accusation mattered in the jury deliberations, but the state didn't stop there either. After initially answering questions, denying involvement, and actually presenting an alibi, Mr. Underwood stated, let's go, I'm done talking to you. Well, isn't that then just simply saying the interview is over? How is that an indication of the right to remain silent? Under King, you can invoke your right to remain silent in the middle of an interview. Once the interview starts, that doesn't mean that you can't invoke it later under King. Wasn't the interview almost over anyway? No, Your Honor. Another police officer had just come into the room and started confronting Mr. Underwood, who had continually declared his innocence to this matter and was getting very aggressive, and that's when Mr. Underwood said, I'm done talking to you. Well, after he said, I'm done talking to you, wasn't the interview complete? The interview was over. The police terminated the interview, but the jury heard that. So the jury heard Mr. Underwood invoke his right to silence. But the State argues that there was no prejudice under McPike in this matter, but the McPike factors actually favor Mr. Underwood here. The State commented on his silence. Although brief, the comment occurred immediately before deliberations in his rebuttal argument. No period of instruction was given. Trial counsel did not object, and the evidence was closely balanced. None of these areas were challenged by trial counsel. We have ineffective assistance of counsel because counsel did not object to any identification testimony in this case, did not request the Thompson safeguards, did not request any limiting instructions, did not seek exclusion or redaction of the caller's accusation, did not object to the Dotto violation, and did not object to the court's response to the jury's note. Under Strickland, counsel performs deficiently when representation falls below an objective standard of reasonableness, and prejudice exists when there is a reasonable probability the result would have been different absent these errors. Given the central importance of identity here, the lack of direct identification evidence, and the jury's demonstrated focus on improper evidence during deliberations, there is a reasonable probability these errors affected the verdict. Ultimately, all these errors point back to the same issue that drove this case from the beginning, identity. This was a closely balanced case built almost entirely on circumstantial evidence. The jury's role was to determine whether the similarities were enough to establish identity beyond a reasonable doubt. Instead, the State repeatedly reinforced its theory. In effect, Officer Christman supplied the critical inference. For all of these reasons, Your Honor, Mr. Underwood respectfully asks this Court to reverse his conviction and demand for a new trial. Any questions? No questions. Thank you, counsel. Thank you very much. Obviously, you'll have your time for rebuttal. May it please the Court, counsel. My name is Amber Cain, and I'm here on behalf of the Appalachee State of Illinois. I'll start with the Thompson issue. This is not classic Thompson information. The Thompson case is where the defendant is identified by a lay witness, particularly in this case a police officer. That would be the police officer saying, that is the defendant on the video. That is not what we have here. What we have here are questions like, why did you take the genes into evidence? I took the genes into evidence because they matched. Why did you take photographs of the shoes? Because they matched. That is not identifying the defendant on the video. Why did you arrest the defendant? Because his clothing was consistent with that that was on the video. It explains why the officer did that. And Banks specifically authorizes course of investigation testimony. Now, if this Court should disagree and find that it should have been Thompson, we take a different analysis. We take the analysis under Strickland and Plain Air. Was there prejudice? Well, there would not be prejudice. It was not a closely balanced case. There was adequate circumstantial evidence. The clothing was very similar. There were LeBron James shoes. There was a specific type of ripped jeans. The jury could see that. The jury not only had the dash cam footage from the officer. Is there a position that that video showing those pants is clear? The video needs some explanation. The video I was referring to was the defendant's interview and the body cam footage that shows him being taken into custody. The clothing is very clear in those. So the jury has the opportunity to see them. But not in the surveillance video from the bar. That is correct. Now, the officer saw contemporaneous and he had the opportunity to observe the clothing on the defendant contemporaneous with the events. So I do believe that he had something to offer the jury in saying that the clothing was consistent. But the statement that the pants match meant to the jury, it was the defendant wearing those pants. Respectfully, Your Honor, I disagree. I would say if we had similar shirts, well, look, we match today. It's consistent. It doesn't say those are the specific pants in that video. That's the critical distinction. Consistent versus match. Right? I think match means they're the same style. They're the same type. They may even be the exact same shoes. But there's also a critical point here that it's not just those shoes were the same. Those pants were the same. But it's the combination. The burglar was wearing ripped jeans that were consistent and LeBron James shoes that were consistent. So the jury can take those two pieces of evidence and put it together. The jury still had the ultimate role of making a decision of do those items mean this defendant is the burglar. Now, even if you say, okay, this should have been analyzed under Thompson, we come to the prejudice issue. Was the evidence closely balanced? No, because we had significant other evidence. We had the defendant was found in the area hiding. We had the trash can. The location the defendant was found was essentially a straight path from the bar to the trash can to where the defendant was hiding. We have the defendant's improbable statement that he was hiding because this is a high crime area. No. That doesn't explain that. The statement was he was hiding because he was afraid of police reaction. He made two statements. He said, you know, the area is known for drugs, guns, and that's just what we do. He also made some very vague statement about something that happened with his son, which wasn't really fleshed out. Well, that's improbable. You're hiding in close proximity to the bar, in close temporal proximity. You were there just a very short time afterwards in a direct line from where the evidence was found, the trash can, to where you were hiding in the bar. It was a straight line. So the jury had adequate other evidence other than these very brief comments by the officer, which was designed to explain why he took these items in evidence. Counselor, remind me, did anyone from this bar identify this trash can as the same one that was taken from the bar? Yes. I cannot point you to where in the record. I can supplement that if the court wants, but it is definitely in there. I believe he said it's the same type of trash can, and those are the items that are missing. Back to the prejudice, there's simply no prejudice that can be established. There was adequate other information, and that's the defendant's burden to establish prejudice or, under plain error, that it would have tipped the scales. Now, I would like to touch briefly on the Doyle issue. Defendant wants to make a big deal about the termination of the interview. I'm done talking. Now, Anderson v. Charles, a U.S. Supreme Court case, makes it very clear that it's a different situation when a defendant talks. Doyle is designed to make sure a defendant's silence is not used against them. One of the key factors there is whether or not the state ever used it. The state never used that. Defendant wants to say, well, they made this statement, but they gave him a chance to talk. Yes, they said that. And he did talk, and that's what they're referring to. And it's in direct response to what defendant's counsel said in their closing. This was not an indication of silence. It was a termination of the interview. He gave them his version, and he was done. And that's all he wanted to give them. Now, it's also important to note, and I cite this in my brief, quesada. Defendant's counsel not only did not object, they affirmatively said they had no objection. They acquiesced to the admission of this interview as it was. That is foreclosed. That's done. They acquiesced to it. They cannot now raise it. They would have to raise it under ineffective assistance, and we're back to the where's the prejudice. Well, how about guns and drugs? That's what we do. Are you saying that's not prejudicial? Guns and drugs is not other crimes evidence under 404B. It is a vague reference. First of all, it's not a specific crime for the defendant, and you need that. Under Burton, a vague reference to criminal activity is insufficient to meet other crimes evidence. You need a specific statement of this is what the defendant did, and you don't have that here. So, no, I do not believe that would be prejudicial. Moreover, it goes to the defendant's narrative of why he's hiding. If you take that out, the defendant doesn't have an explanation. So, I'm sorry, I lost my train of thought. The statement, guns and drugs, that's just what we do. That's the defendant's narrative of what happened, and it is not other crimes, so it should not have been kept out. I want to touch briefly on the confrontation clause, because I see I'm, well, I guess I'm. No, you have, I think, a minute. Okay. I want to touch briefly on the confrontation clause. In Clefford v. Washington, in footnote 9, they note, Clefford does not bar the admission of testimonial hearsay, which is admitted for other purpose. And here, that's the crucial issue. This is admitted for a valid purpose, all of these. Banks goes back to say that it's okay to admit this kind of stuff under the investigative purpose. Investigative purpose isn't unlimited, but it is applicable in this case. So, for those reasons, I would ask that you affirm the defendant's conviction. Any questions? Just a moment. Why wasn't it sufficient for the officer simply to have testified that this unknown caller saw someone exit the bar after hours? When we bring in the carrying a heavy object, which can be linked to this trash can, don't we get in to hear substantive testimony for which there's no right to cross-examine this unknown caller on that piece of evidence? I don't believe so, Your Honor, and the reason is because this trash can needs to be tied to the bar. It needs to be tied to the bar. Why did we even stop to look at it? But you said someone already testified that that trash can matched what was in the bar. That didn't come until later. That came after the officer said, this is why I did what I did. I stopped here. This was the officer with the canine, and that's very important because it's why did you focus on this area? Why did you go where you went next? It's because this trash can is here. And if that trash can can't be tied back to the initial investigation, it leaves the jury with a fragmented explanation. The jury ultimately heard the testimony, apparently, that this trash can matched what was in the bar, so the state knew that prior to the start of trial. Why did they need to bring out the fact that this caller saw someone carrying a heavy object out of the bar? Because it was still necessary to explain why the officer did what he did in his investigation. You're good. Just come in. All right. Thank you. May I please report? Counsel suggests Officer Christman was merely explaining why he collected the clothing. Respectfully, that is not what the prosecutor said. The prosecutor asked a leading question, did they match the pants that were shown on the video? This was not a proper foundation. This was a leading question for opinion testimony. The prosecutor needed to make a case, a strong identification case, and he chose to do it through improper testimony here. If the purpose was truly foundation, the state could have asked whether they collected as evidence during investigation or whether these pants were the pants Mr. Underwood was wearing when he was detained. Instead, the state chose to ask the matched question. That was not a neutral foundation, and the reason that mattered is because this is not a case with an eyewitness identification or any substantial evidence. Identity depended largely on clothing comparisons. Yes, Mr. Underwood happened to be wearing manufactured jeans that have very common manufactured rips in them, and that was what they based pretty much their entire case on. Counsel states that there was overwhelming evidence. Well, Mr. Underwood had a reason in his interrogation video for everything that was going on. He was in the neighborhood because he was over on Cerro Gordo, which is one street past the railroad track. If you've got Cerro Gordo Street, you then have the railroad tracks, the woods, and about a block and a half later, you have the bar. He was found 42 minutes later, and he told them in no uncertain terms that he had been partying on Cerro Gordo Street, that the cops swarmed that neighborhood because they were looking for the burglar from the bar, and so everybody ran from the house where they were partying because they thought the house was going to be raided. And Mr. Underwood gave a very good reason for hiding from the police. He feared being shot by the cops, as apparently his son had been, which is what he told them. But getting back to the necessary law here, the state essentially is saying that the caller's statement was not testimonial under Crawford and Davis. The caller's statement was testimonial. The crime had already occurred. There was no emergency continuing. The caller called for investigative purposes. Those are the requirements that make a statement by a caller testimony. This was investigative. Further, Your Honor, the state says there is no prejudice here. I respectfully disagree that this record reflects overwhelming evidence. The perpetrator's face was concealed. We've discussed many aspects of the identification here. The state's case depended largely on this circumstantial evidence, and that is the precise reason that this Thompson violation, both of these Thompson violations, none of the Thompson safeguards were opposed to none. This wasn't a matter of skipping over one or skipping over another. There would have been a proper foundation if the defense counsel had had the opportunity to question Officer Crisman outside the presence of the jury, as she was supposed to have done, but didn't know this was coming. There would have been a proper foundation. She discussed in her brief that there was an issue with the fit of the pants that Officer Crisman was therefore in a better position. Well, if there had been the Thompson safeguards, this would have been determined before the issue ever got in front of the jury. But with the violation of all of the Thompson safeguards here, this is not a harmless error, Your Honor, and therefore we would ask that this case be remanded for further proceeding. Justice McCain, any questions? No questions. All right. Thank you, counsel. Thank you so much. We will take the matter under advisement. We will issue an order in due course. We thank you for your arguments today.